# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **CHARLES A. McRAE,** | )<br>)<br>) |
| **Plaintiff,** | )<br>) |
| vs. | )<br>) |
| **SHANNON N. MYERS,**<br>**JANE DOE 1,**<br>**JANE DOE 2,**<br>**D. REARDON,**<br>**R. JEFFREYS,**<br>**L. MCCARTY,**<br>**D. KNAUER,**<br>**S. JOHNSON,**<br>**J. EILERS,**<br>**E. JACKSON,**<br>**M. DELIA,**<br>**R. NOTTINGHAM,**<br>**A. TACK,**<br>**C. LARRY,**<br>**M. NURSE,**<br>**D. WILSON,**<br>**T. WILLIAMS,**<br>**O. JAMISON,**<br>**D. MARANO,**<br>**K. RENZI.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  **Case No. 20-cv-410-DWD**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| **Defendants.** | ) |

## **MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

Plaintiff Charles McRae, an inmate at the Joliet Treatment Center (JTC) in the Illinois Department of Corrections (IDOC) brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 31). This is Plaintiff's Second Amended Complaint, which was timely filed after the Court dismissed

his earlier complaints for failure to state a claim. His allegations stem from an alleged series of sexual assaults by a prison employee that began at Big Muddy River Correctional Center (Big Muddy) and continued upon his release. In recent years, Plaintiff alleges that he has repeatedly attempt to raise these issues to staff at the JTC and staff of the IDOC to no avail. He seeks injunctive and monetary relief.

Plaintiff's Second Amended Complaint (Doc. 31) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

The factual allegations in Plaintiff's Second Amended Complaint are strikingly similar to his First Amended Complaint. *Compare* (Docs. 15, 31). However, in the Second Amended Complaint Plaintiff replaced many John Doe defendants with the names of individuals. In the Second Amended Complaint, Plaintiff also elaborated on many of his legal claims.

At the outset of the Second Amended Complaint, Plaintiff discusses Illinois State statutes and administrative procedures, as well as provisions of the Code of Federal

Regulations, that he views as applicable to his case. (Doc. 31 at 6-18). The Court does not find it necessary to recount these details for the purposes of this initial review order.

Plaintiff alleges that around August 2008, he was assigned a job as a health care porter at Big Muddy. (Doc. 31 at 18). As part of his job duties, Plaintiff worked in the dental area with Defendant Myers. In late 2008 during one of his shifts, Myers allegedly cornered Plaintiff in an exam room and kissed him. (Doc. 31 at 20). Plaintiff did not report the incident for fear that it would impact his release date, but Myers allegedly told Jane Does 1 and 2. Plaintiff told Myers that he was not interested in a relationship. Plaintiff alleges that over time, Myers continued to corner him, and she began to sexually assault him on numerous occasions. He alleges that Jane Does 1 and 2 knew about this conduct and acted as a look out, to warn Myers if anyone was in the vicinity. Plaintiff alleges that this conduct occurred on a regular basis until his release from Big Muddy on May 9, 2009. (Doc. 31 at 23).

Upon release, Myers showed up at Plaintiff's parole placement house and told his host site provider that she was his girlfriend, and she was pregnant with his child. (Doc. 31 at 24). From that point forward, Myers frequently came to Plaintiff's host site and sexually assaulted him. A few weeks later, Myers convinced Plaintiff's host to contact IDOC and to tell them she was no longer willing to host Plaintiff. IDOC directed Plaintiff to move to Myers' house and to stay there until a parole officer visited. (Doc. 31 at 25). At some point during his stay at Myers' house, Defendant Reardon, a parole agent, came by to check on Plaintiff. Reardon had Plaintiff call Myers at work and then Reardon took the phone outside and spoke to Myers for a while. Reardon returned and told Plaintiff

that he had approved Myers' house as his new host site. Plaintiff alleges that this caused him to be subjected to physical, financial, and sexual servitude for the next eleven months. (Doc. 31 at 27).

During his eleven-month stay at Myers' house, Plaintiff alleges that among other things she would not allow him to seek inpatient treatment for his mental illness. (Doc. 31 at 28). As a result, Plaintiff alleges he ultimately suffered an emotional, mental, and physical breakdown which led to his reincarceration. Upon reincarceration, Myers allegedly told Plaintiff he had to keep their relationship a secret and she threatened to harm him or to terminate his parental rights to their child. Plaintiff alleges that he lived in fear for eight years. (Doc. 31 at 29).

Plaintiff alleges that in 2019 he was transferred from Dixon Correctional Center to the JTC. On May 21, 2019, he attended a court hearing with Myers.[1] After the hearing, Myers allegedly threated Plaintiff. Plaintiff claims that two employees from the JTC witnessed the conversation and asked him about it. (Doc. 31 at 30). Plaintiff refused to talk about it. Plaintiff began to research his encounters with Myers and Reardon, at which time he decided he had been a victim of custodial sexual misconduct. (Doc. 31 at 31).

On August 5, 2019, Plaintiff filed a grievance with the Administrative Review Board (ARB) about this alleged staff misconduct. The ARB determined that his grievance was moot because the allegations were being investigated by Central Investigations. (Doc. 31 at 31; Doc. 31-1 at 3). On August 5, 2019, Plaintiff alleges that he also informed

---

[1] The purpose or nature of this hearing is unclear. Plaintiff submitted a short excerpt of the transcript as an exhibit to his complaint. It appears that Myers was cross-examined by Plaintiff at the hearing and that she testified on her own behalf. (Doc. 31-1 at 55-59).

JTC staff of his past abuse and requested counseling from a behavioral health counselor. (Doc. 31 at 31). The counselor indicated that she would inform Defendant Marano of his wish for a victim advocate or further counseling.

On August 6, 2019, Plaintiff was interviewed without a victim advocate by Defendant Lt. Allen. After their conversation Allen said that an investigator from the ISP would be in contact with him. (Doc. 31 at 32). She also had Plaintiff sign a summary of her notes, which he was not afforded time to read. When he later asked her for a copy, she said he could only obtain it by filing a Freedom of Information Act request. (Doc. 31 at 33). Plaintiff alleges that no one ever followed up on Allen's interview.

On August 9, 2019, Plaintiff asked Imburgia to speak with Marano about his requests for a victim advocate and counseling. Plaintiff renewed his request on August 23, 2019. Plaintiff also submitted a grievance requesting services. On August 27, 2019, Imburgia told Plaintiff that Marano would not provide services unless it was a confirmed rape. (Doc. 31 at 34-35). On August 29, 2019, Plaintiff's grievance was returned, and services were refused on the premise that he needed to be more specific about when the alleged sexual abuse occurred. (Doc. 31 at 35; Doc. 31-1 at 9-12). Plaintiff appealed to the ARB. He alleges that Defendant Knauer initially denied his grievance for a variety of reasons, and when he attempted to cure those issues, he got no response to a subsequent grievance.

Plaintiff engaged in efforts to secure his own counseling. He alleges that the Guardian Angel Comm. Services (GACS) agreed to provide services, so he notified Defendants Tack, and Marano. (Doc. 31 at 35-36). Plaintiff was eventually told that to

have GACS visits, he would need to sacrifice visits that could otherwise be used for family or friends. He used 4-5 visits per month for GACS.

On December 13, 2019, Plaintiff filed a grievance challenging the requirement that he sacrifice visits for GACS to visit him and requesting a private meeting space with the GACS counselor because the counselor had told him she could not discuss sexual assault issues in a public space. (Doc. 31 at 36). Plaintiff alleges that the December 13 grievance was never responded to by Tacks, so after 60 days he sent it to the ARB. Knauer at the ARB refused to address the grievance because it had no institutional response. (Doc. 31 at 37). At the direction of Defendant Jamison, Plaintiff refiled the December 13 grievance.

On December 16, 2019, Plaintiff filed a grievance with the ARB concerning the outcome of his PREA investigation. (Doc. 31 at 37). Knauer denied the grievance as moot and indicated the office had disposed of the issue on August 27, 2019.

On January 24, 2020, Plaintiff filed three grievances concerning Jeffreys, McCarty, Central Investigations and Sarah Brown-Foiles, regarding their handling of his sexual assault allegations. Defendant Knauer deemed all three grievances untimely, which Plaintiff alleged was wrong because he had been waiting on responses to the issues raised therein.

Plaintiff alleges he subsequently filed a grievance about Knauer's denial of his grievances, which Defendants Jeffreys and Johnson denied as unsubstantiated. They informed him that his complaints were being investigated in compliance with PREA policy, although he disagreed. (Doc. 31 at 38). Plaintiff alleges that Defendants actions continued to the time of filing this case.

He claims that in early 2020 visits from GACS were completely discontinued by the JTC. (Doc. 31 at 38).

Plaintiff alleges that the Defendants conduct constituted negligence, a breach of duty, and official misconduct. He explains at length why he believes that various actions and incidents were improper. (Doc. 31 at 39-45). He then lists 10 enumerated claims for relief.

In Claim 1, Plaintiff alleges that Defendant Myers abusive conduct constituted cruel and unusual punishment. (Doc. 31 at 45-46). In Claim 2, Plaintiff alleges that Defendants Jane Doe 1 and 2, and Reardon failed to protect him or intervene in Myers' conduct. (Doc. 31 at 46-47). In Claim 3, Plaintiff alleges that Myers, Reardon, Jane Doe 1 and Jane Doe 2 failed to protect him from custodial sexual misconduct. (Doc. 31 at 47). In Claim 4 he alleges that Defendants Reardon, Jeffreys, McCarty, Knauer, Johnson, Eilers, Jackson, Delia, Nottingham, Tack, Larry, Nurse, Wilson, Williams, Jamison, and Renzi denied him his right to petition the government for redress concerning the alleged assaults. (Doc. 31 at 48-49). In Claim 5, Plaintiff alleges that Defendants Myers, Jane Does 1 and 2, Reardon, Jeffreys, McCarty, Knauer, Johnson, Eilers, Jackson, Delia, Nottingham, Tack, Larry, Nurse, Wilson, Williams, Jamison, Marano and Renzi violated his right to equal protection by refusing to report or investigation this incident. (Doc. 31 at 49-51). In Claim 6, he alleges that Defendants Jeffreys, McCarty, Knauer, Johnson, Eilers, Jackson, Delia, knotting ham, Tack, Larry, Nurse, Wilson, Williams, Jamison, Marano, and Renzi retaliated against him because he was denied protections any person should expect when reporting such an issue. (Doc. 31 at 51-52). In Count 7 he alleges that Myers, Jane Does

1 and 2, and Reardon conspired to allow Myers' actions to occur because the Does acted as a look out and Reardon helped Myers to arrange the parole living situation. (Doc. 31 at 52-53). Claim 8 alleges state law assault battery and sexual abuse/assault against Myers for her actions. Claim 9 alleges state law intentional infliction of emotional distress against numerous defendants. Claim 10 alleges custodial sexual misconduct against Myers. (Doc. 31 at 55).

As relief Plaintiff seeks an injunction to direct a final agency decision regarding the sexual assault allegations, referral of the matter to the ISP for investigation, compliance with the PREA, a treatment agreement between GACS and the JTC, a private counseling space at JTC, initiation of new GACS services for Plaintiff, a PREA audit at the JTC, notification to IDOC of the probability of retaliation from Myers, and an investigation into all allegations in the lawsuit. Plaintiff also seeks monetary damages.

The court adopts the claims proposed by Plaintiff, based on the Second Amended Complaint:

**Claim 1:** **Eighth Amendment cruel and unusual punishment against Defendant Myers;**

**Claim 2:** **Eighth Amendment failure to protect or intervene against Defendants Jane Doe 1 and 2 and Reardon;**

**Claim 3:** **Eighth Amendment failure to protect against Defendants Myers, Reardon, Jane Does 1 and 2;**

**Claim 4:** **First Amendment right to seek redress from the government against Defendants Reardon, Jeffreys, McCarty, Knauer, Johnson, Eilers, Jackson, Delia, Nottingham, Tack, Larry, Nurse, Wilson, Williams, Jamison and Renzi for their alleged failure to investigate Plaintiff's allegations;**

| | | |
|---|---|---|
| Claim 5: | | Equal Protection claim against Defendants Myers, Jane Doe 1 and 2, Reardon, Jeffreys, McCarty, Knauer, Johnson, Eilers, Jackson, Delia, Nottingham, Tack, Larry, Nurse, Wilson, Williams, Jamison, Marano and Renzi for failing to investigate Plaintiff's allegations when other victims would have been treated differently; |
| Claim 6: | | Retaliation against Defendants Jeffreys, McCarty, Knauer, Johnson, Eilers, Jackson, Delia, Nottingham, Tack, Larry, Nurse, Wilson, Williams, Jamison, Marano, and Renzi for denying him protections that should have been taken in response to his allegations; |
| Claim 7: | | Conspiracy claim against Defendants Myers, Reardon and Jane Does 1 and 2 for allowing Myers' conduct; |
| Claim 8: | | State law assault, battery, sexual abuse/harassment claim against Myers; |
| Claim 9: | | State law intentional infliction of emotional distress claim; |
| Claim 10: | | State law custodial sexual misconduct claim against Myers; |
| Claim 11: | | State law negligence claim against all defendants. |

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### Preliminary Dismissals

In the master caption of his Complaint, Plaintiff lists J. Eilers, E. Jackson, M. Delia, C. Larry, M. Nurse, D. Wilson, T. Williams, and K. Renzi as defendants in this action. Although Plaintiff identifies each of these individuals' job title and general

responsibilities in the opening pages of his complaint, he does not make any factual allegations that demonstrate personal involvement of these individuals. Section 1983 liability is premised on individual responsibility, so generic allegations about the defendants' job duties are not sufficient to state claims against these parties. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). Additionally, if a party is named in the caption, but there are no factual allegations as to that party, dismissal is appropriate. Here, the Court will dismiss Defendants Eilers, Jackson, Delia, Larry, Nurse, Wilson, and Williams because Plaintiff failed to identify sufficient factual allegations to state a claim against these individuals under § 1983.

## Analysis

Claim 1 alleges cruel and unusual punishment against Defendant Myers for her alleged sexual conduct from approximately 2008-2010. The applicable statute of limitations period for actions brought pursuant to 42 U.S.C. § 1983 is a state's period for personal injury torts. *See Kalimara v. Ill. Dept. of Corrections*, 879 F.2d 276, 277 (7th Cir. 1989). In Illinois, where the events in Plaintiff's complaint occurred, that period is two years. *See Woods v. Illinois Dept. of Children and Family Svcs.*, 710 F.3d 762, 765-766 (7th Cir. 2013); 735 ILCS § 5/13-202. Illinois recognizes equitable tolling of the two-year period for an inmate to pursue administrative exhaustion of a claim at the institutional level. *See Terry v. Spencer*, 888 F.3d 890, 894 (7th Cir. 2015). A court may sua sponte dismiss a case at § 1915A review if the applicability of the statute of limitations is "so plain from the language of the complaint…that it renders the suit frivolous." *Id.* at 894; *Dickens v. Illinois*, 753 Fed. App'x 390 (7th Cir. 2018) (a court may dismiss a complaint upon screening if it

is clearly barred by the statute of limitations). In this case, Plaintiff's allegations against Defendant Myers for the alleged sexual assaults concern activity from 2008-2010. Plaintiff did not begin to grieve the issue, nor did he file a complaint until 2019 or 2020. Claim 1 is plainly untimely, so it will be dismissed.

Claims 2, 3, and 7 are also time-barred because they allege a failure to protect or intervene in violation of the Eighth Amendment, as well as a conspiracy under § 1983. All of these claims are governed by the same two-year statute of limitations.

In Claim 4, Plaintiff alleges that Defendants Reardon, Jeffreys, McCarty, Knauer, Johnson, Eilers, Jackson, Delia, Nottingham, Tack, Larry, Nurse, Wilson, Williams, Jamison and Renzi interfered with his right to seek redress from the government concerning the alleged assaults. This claim is subject to dismissal for multiple reasons. First, as explained above in the preliminary dismissal section, there are no individualized allegations as to Defendants Eilers, Jackson, Delia, Larry, Nurse, Wilson, and Williams so these defendants have been dismissed. Second, the only allegations in the complaint against Defendant Reardon pertain to his actions in 2009 when Plaintiff was on parole. The allegations about Reardon do not reflect interference with Plaintiff's right to seek redress from the government, but even if they did, the claim would be barred by the statute of limitations because Plaintiff's interactions with Reardon occurred more than ten years ago.

Third, as to the remaining Defendants that Plaintiff names in support of this claim—Jeffreys, McCarty, Knauer, Johnson, Jamison, Nottingham, Tack, and Renzi— although he presents his claim as one of interference with the right to redress the

government, his factual allegations are more consistent with interference with the grievance procedure. Specifically, he alleges throughout the complaint that these individuals participated in the review and denial of multiple grievances. (Doc. 31 at 31, 35-38). The problem with these factual allegations is that inmates do not have any First Amendment right to access a grievance procedure, so interference with grievances alone does not state a First Amendment claim. *See e.g. Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, standing alone, violate the Constitution. *Maust v. Headley*, 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100–01 (7th Cir. 1982). Additionally, Plaintiff cannot plausibly allege that the defendants' actions prevented him from seeking redress in the courts because he was able to file this lawsuit, and it was not dismissed for grievance problems. Thus, Claim 4 fails as to all defendants, and it will be dismissed.

In Claim 5, Plaintiff alleges that Defendants violated his right to Equal Protection. He claims that he is a "class of one." The Court previously dismissed this claim from Plaintiff's First Amended Complaint because he failed to identify anyone from whom he was treated differently. (Doc. 26 at 7-8). Plaintiff attempted to remedy this problem by alleging that he was treated differently than other victims in IDOC. "To state a so-called 'class-of-one' equal protection claim, [Plaintiff] must allege that he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Geinosky v. City of Chicago*, 675 F.3d 743, 747 (7th Cir. 2012). "A bare allegation of bad motive, however, is not enough." *Del Marcelle v. Brown Cnty. Corp.*,

680 F.3d 887 (7th Cir. 2012). A plaintiff must establish an arbitrary action and some improper personal motive for the differential treatment. *Id.* Here, Plaintiff alleges that the named defendants arbitrarily failed to investigate or escalate his reports of a sexual assault, but he does not suggest any improper personal motive on behalf of the named defendants. Given the minimal allegations about Plaintiff's differential treatment, and the total lack of allegations that the defendants had a improper personal motive, Plaintiff has failed to state a class-of-one claim.

In his Equal Protection claim Plaintiff emphasizes that without an investigation into his allegations, he has not been able to pursue criminal charges, but even if there was an investigation it would not enable him to initiate criminal charges on his own behalf. "Private individuals 'lack [] standing to contest the policies of the prosecuting authority' and 'lack [] a judicially cognizable interest in the prosecution or nonprosecution of another.'" *Sparks v. McCarthy*, 2020 WL 12738796 at *4 (S.D. Ind. 2020) *citing Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). To the extent he contends that he was treated differently because of the lack of prosecution, he has no standing to raise this issue via Equal Protection. *Id.*, see also *United States v. Moore*, 543 F.3d 891, 901 (7th Cir. 2008) (declining to recognize a class-of-one claim concerning prosecutorial discretion because the discretion conferred on prosecutors in choosing who and how to prosecute is flatly inconsistent with a presumption of uniform treatment, and thus the notion of arbitrariness or irrationality is a poor fit for assessing discretionary charging decisions). Plaintiff's frustration over the handling of his alleged sexual assault is understandable, but he has not alleged an improper personal motive for the handling of his claim, and

even if he did his desire to have a criminal prosecution against the assailant is not attainable via a class-of-one claim because it involves prosecutorial discretion. Thus, Claim 5 will be dismissed.

In Claim 6, Plaintiff alleges that many defendants have retaliated against him for filing grievances and complaining of his alleged sexual assault. The Court dismissed this claim from the First Amended Complaint because Plaintiff's alleged injury (a limit on the number of visitors he could have while receiving visits from GACS) was not sufficient to demonstrate retaliation. In his Second Amended Complaint, Plaintiff has attempted to bolster this claim by alleging that he pled a chronology of events that show he was denied the protections that should be put in place when someone reports a sexual assault. Plaintiff cross-references the negligence section of his Second Amended Complaint, wherein he recited all the investigative steps that he believes should have been taken in response to his reported assault. (Doc. 31 at 39-45). The negligence section of Plaintiff's Second Amended Complaint is a formulaic laundry list of investigative steps he believes defendants should have taken in response to his report of an assault, and a laundry list of service he believes should have been rendered by the JTC.

"First Amendment retaliation cases require the petitioner to show that the speech or activity was constitutionally protected, a deprivation occurred to deter the protected speech or activity, and the speech or activity was at least a motivating factor in the decision to take retaliatory action." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). The 'motivating factor' amounts to a causal link between the activity and the unlawful retaliation." *Id.*

The Court will assume that Plaintiff's reporting of a sexual assault is protected speech. In the Second Amended Complaint, rather than focusing solely on limitations as to how many visitors he can have while receiving GACS services, Plaintiff now alleges that he was "denied all protections put in place that should happen in response to allegations of this sort." (Doc. 31 at 52). He alleges that he described many acts that could be understood as retaliation. Even if Plaintiff has identified deprivations, he does not allege a clear tie between his speech and the alleged deprivations he identified. Many of the 'deprivations' he alleges in the negligence section of his pleading are his own disagreements with the handling of his grievances and other correspondence about the issue. Although he may not have agreed with the handling of these matters, he has failed to show how they are tied to his speech, and thus he has failed to show retaliation. Accordingly, Claim 6 will be dismissed.

Claims 8-11, and the negligence portion of Plaintiff's Second Amended Complaint, all rely on state law. It would be an exercise of this Court's supplemental jurisdiction to maintain these claims because all claims that rely on federal law have been dismissed. Supplemental jurisdiction is discretionary. 28 U.S.C. § 1367. Here, the Court will decline to exercise supplemental jurisdiction. It is possible that Plaintiff's best recourse would be found in state court.

Having given Plaintiff two opportunities to file amended pleadings to no avail, the Court finds it unnecessary to extend an additional opportunity. *See e.g. Burks*, 555 F.3d at 596; *Always Towing & Recovery, Inc. v. City of Milwaukee*, 2 F.4th 695, 707 (7th Cir. 2021) (courts may deny leave to amend if an amendment would be futile); *McCree v.*

*Grissom*, 657 F.3d 623, 624 (7th Cir. 2011) (leave to amend shall be granted where justice so requires, but leave to amend need not be given if an amendment to the complaint would be futile). This is not to say that Plaintiff's allegations are unimportant, and this does not pass any judgment on the merits of Plaintiff's assertion. The Court has solely determined that Plaintiff has not pled a federal cause of action on the facts presented.

## **Pending Motions**

On June 7, 2021, this Court dismissed Plaintiff's First Amended Complaint for failure to state a claim, and it dismissed four counts with prejudice. Three counts were dismissed as time-barred, and one was dismissed because the Prison Rape Elimination Act (PREA) does not create a private cause of action. (Doc. 26 at 6-7). Plaintiff asked the Court to reconsider this dismissal on July 8, 2021, and the Court denied this request on November 12, 2021, because Plaintiff had filed an operative complaint which it found mooted any earlier pleadings. (Docket text 37).

On January 13, 2022, Plaintiff again sought reconsideration of the earlier dismissal of Counts 1-4 of his First Amended Complaint. Plaintiff sought for the dismissal to be changed to without prejudice so that he could present the claims anew in his Second Amended Complaint. He argues that if he were not allowed to present the claims in his Second Amended Complaint, he would be barred from appealing the dismissal of the First Amended Complaint in an interlocutory fashion. (Doc. 44).

The Second Amended Complaint contained claims that were somewhat similar in nature to Counts 1 and 2 of the First Amended Complaint, but out of deference to Plaintiff

as a pro se litigant, the Court considered the claims as if they were new because Plaintiff substituted named parties for many of the Does in his earlier pleadings.

To the extent that Plaintiff seeks to have the earlier dismissal changed from with prejudice to without prejudice, the Court declines to make this change. The dismissal of the earlier claims was appropriate. This is particularly so for the PREA claims because it is settled law that there is no private right of action under the PREA. Accordingly, Plaintiff's Motion to Reconsider (Doc. 44) is **DENIED**.

Plaintiff also filed a Motion for Status (Doc. 49) on March 28, 2022, which will be **DENIED** as moot based on the issuance of this Order.

## Disposition

Based on the foregoing analysis, the Court will **DISMISS** Plaintiff's entire Second Amended Complaint for failure to state a claim under 28 U.S.C. § 1915A. Plaintiff will not be given leave to amend. Plaintiff's Motion to Reconsider (Doc. 44) is **DENIED**, and his Motion for Status (Doc. 49) is **DENIED** as moot.

If Plaintiff wishes to appeal this Order, he must file a notice of appeal with this Court within thirty days of the entry of judgment. FED. R. APP. P. 4(a)(1)(A). If Plaintiff chooses to appeal, he will be liable for the $505.00 filing fee irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-56 (7th Cir. 2008). Moreover, if the appeal is found to be nonmeritorious, Plaintiff may incur another "strike" under 28 U.S.C. § 1915(g). A proper and timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day appeal deadline.

Fed. R. App. P. 4(a)(4).  A Rule 59(e) motion must be filed no later than 28 days after the entry of judgment, and this 28-day deadline cannot be extended.

The Clerk of Court is **DIRECTED** to enter judgment accordingly and to close this case.

**IT IS SO ORDERED.**

Dated: April 21, 2022

_____
DAVID W. DUGAN
United States District Judge